**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MIRSADA SINANOVIC,

                     Plaintiff,

vs.                                 Case No.  3:14-cv-132-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                     Defendant.

_____/

**OPINION AND ORDER**[1]

**I. Status**

      Mirsada Sinanovic ("Plaintiff") is appealing the Commissioner of the Social Security

Administration's final decision denying her claim for disability insurance benefits ("DIB").

Plaintiff's alleged inability to work is based on arthritis, high blood pressure, anxiety,

"hyperaldosteronism," and "water retent[]ion."  Transcript of Administrative Proceedings

(Doc. No. 6; "Tr." or "administrative transcript"), filed April 23, 2014, at 149 (emphasis

omitted).[2]  On June 30, 2011, Plaintiff filed an application for DIB, alleging an onset

disability date of October 1, 2010.  Tr. at 134-35.  Plaintiff subsequently amended her

alleged onset disability date to November 1, 2010.  Tr. at 38.  Plaintiff's application was

denied initially, see Tr. at 89-93, and was denied upon reconsideration, see Tr. at 95-99.

---

[1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 5), filed April 23, 2014; Reference Order (Doc. No. 8), entered April 28, 2014.

[2]      At a hearing before an Administrative Law Judge, Plaintiff's counsel indicated that Plaintiff's severe impairments are "osteoarthritis of the right hip and knee, osteoarthritis, arthritis of the right shoulder, lower extremity swelling, and depression," as well as "degenerative disc disease found in the lower spine and osteoarthritis in both hips."  Tr. at 38-39.

On December 19, 2012, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff, who was represented by the same counsel who represents her in this Court, and a vocational expert ("VE") testified. Tr. at 27-61. At the time of the hearing, Plaintiff was fifty (50) years old. Tr. at 31. On February 6, 2013, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. Tr. at 13-22. The Appeals Council received from Plaintiff and incorporated into the administrative transcript some additional medical evidence. See Tr. at 2, 329-43. On December 2, 2013, the Appeals Council denied Plaintiff's request for review, see Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On January 31, 2014, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises one issue on appeal: whether "the [ALJ] adequately and properly consider[ed] the medical opinions and findings from the two consultative examiners, Drs. Varshney and Czerkawski." Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 10; "Pl.'s Mem."), filed June 23, 2014, at 1. Dr. Varshney "evaluated the severity of [Plaintiff's] mental impairments," and Dr. Czerkawski evaluated Plaintiff and provided an opinion regarding her physical impairments. See id. On August 19, 2014, Defendant responded to the issue raised by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 11; "Def.'s Mem."). After a thorough review of the entire record and consideration of the parties' respective memoranda, the

Commissioner's final decision is due to be reversed and remanded for the reasons explained herein.[3]

## II.  The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry through step four where his inquiry ended based on his finding at that step.  See Tr. at 15-22.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since November 1, 2010, the alleged onset date."  Tr. at 15 (emphasis and citation omitted).  At step two, the ALJ found Plaintiff suffers from "the following severe impairments: osteoarthritis of the hip,

---

[3]        As explained in detail infra, the undersigned finds that the ALJ erred in evaluating Dr. Varshney's opinion.  The undersigned further finds that the ALJ did not err in evaluating Dr. Czerkawski's opinion.

[4]        "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

knee and shoulder, unspecified arthropathy/dysfunction of major joints, hypertension, degenerative disc disease and affective mood disorder." Tr. at 15 (emphasis and citation omitted).  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 15 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) except she can occasionally climb ramps, stairs, ropes, ladders and scaffolds. [She] can occasionally stoop, kneel, crouch and crawl. She cannot push or pull with her upper right extremity.  She is limited to simple, routine and repetitive tasks involving up to three step commands with no production rate for pace of work.

Tr. at 16-17 (emphasis omitted).  At step four, the ALJ found Plaintiff "is capable of performing past relevant work as a Housekeeper."  Tr. at 21 (emphasis and citation omitted).  The ALJ concluded, therefore, that Plaintiff "has not been under a disability . . . from November 1, 2010, through the date of th[e D]ecision." Tr. at 22 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere

scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As previously stated, Plaintiff argues that the ALJ did not adequately consider the consultative examining opinions of Dr. Varshney and Dr. Czerkawski.  See Pl.'s Mem. at 13-23.  The Regulations establish a "hierarchy" among medical opinions[5] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining

---

[5] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[6] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the

---

[6] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician).  Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference.  See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted).  Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence.  Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)).  However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence.  Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion.  See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.  "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'"  Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

Dr. Varshney's opinion is the only mental opinion on which the ALJ relied.  Yet, as discussed in more detail below, the ALJ rejected portions of it without adequate explanation as to why he did so.

 Dr. Varshney opined, inter alia, that Plaintiff "experiences difficulties in being able to maintain a regular schedule, learn new tasks, and perform complex tasks independently. . . .  [S]he [also] experiences difficulties in relating adequately with others and appropriately dealing with stress."  Tr. at 287.  After summarizing Dr. Varshney's opinion, the ALJ assigned it "partial weight as [Plaintiff] testified she did not like to communicate to people and also reported crying spells and feelings of hopelessness."  Tr. at 19.  Later in his Decision, the ALJ recognized that Plaintiff "is not receiving treatment

from a mental health professional on a regular basis and is only receiving medication management through her primary care physician, Dr. Rosemund." Tr. at 21.  The ALJ indicated that he accounted for the limitations stemming from Plaintiff's "mental impairment" in the RFC.  Tr. at 21.

Upon review, the undersigned finds the ALJ erred in evaluating Dr. Varshney's opinion.  As noted above, in his Decision, the ALJ stated that he assigned Dr. Varshney's opinion "partial weight as [Plaintiff] testified she did not like to communicate to people," Tr. at 19, and the ALJ limited Plaintiff to "simple, routine and repetitive tasks involving up to three step commands with no production rate for pace of work," Tr. at 17 (emphasis omitted).  These limitations, however, do not account for all of the limitations imposed by Dr. Varshney, such as Dr. Varshney's opinions that Plaintiff would have "difficulties in being able to maintain a regular schedule . . . [and in] relating adequately with others." Tr. at 287. The ALJ failed to explain why these portions of Dr. Varshney's opinions were rejected. Moreover, even though the ALJ apparently credited Dr. Varshney's opinion to the extent that Plaintiff did not like to communicate with people, the ALJ's RFC assessment does not readily account for that opinion.

Without an adequate explanation from the ALJ as to why he credited certain portions of Dr. Varshney's opinion and rejected other portions,  the undersigned cannot find the Decision is supported by substantial evidence.  This is especially so for two reasons.  First, Dr. Varshney is the only mental health professional who actually <u>examined</u> Plaintiff and

opined about her mental limitations after the alleged disability onset date.[7]  Second, the ALJ assigned "little weight" to the opinions of the non-examining state agency consultants who provided opinions regarding Plaintiff's mental limitations, because the ALJ reasoned that Plaintiff "is more limited" than allowed for in those opinions.  Tr. at 20.  In sum, the ALJ failed to adequately explain his assessment of Dr. Varshney's opinion.  That failure frustrates judicial review and requires remand for further consideration by the ALJ.

Turning to Dr. Czerkawski's opinion, the ALJ summarized his opinion, Tr. at 19-20, 21, and assigned it "little weight," Tr. at 20.  The ALJ reasoned that "the objective medical records indicate[] he is not [Plaintiff's] primary treating physician and that he has had minimal involvement in the treatment of [Plaintiff].  Further, [Dr. Czerkawski's] restrictions are inconsistent with his and Dr. Rosemund's treatment notes, which indicate relatively conservative and routine treatment."  Tr. at 20.  The ALJ also noted that Dr. Czerkawski's "opinions are inconsistent with [Plaintiff's] own reports that she is able to perform her own personal care, cook, grocery shop, and perform light housework."  Tr. at 20 (citing Tr. at 283-88[8]).  Additionally, the ALJ found that "the functional questionnaire completed by Dr. Czerkawski was inconsistent with his own examination of [Plaintiff's] physical capacity."  Tr. at 21.  As an example, the ALJ pointed out that "Dr. Czerkawski indicated [Plaintiff] could only occasionally lift, but never more than ten pounds[; h]owever, during his physical

---

[7]     Plaintiff submitted to the Appeals Council a "Clinical Evaluation and Mental Status" dated February 13, 2009 that was completed by Peter Knox, Psy.D.  Tr. at 336-43.  This evidence predates Plaintiff's alleged disability onset date by about twenty-one months.  The Appeals Council considered this evidence and "found that this information does not provide a basis for changing the [ALJ's D]ecision." Tr. at 2.  Plaintiff does not challenge the Appeals Council's decision in this appeal.

[8]     The ALJ cited to Exhibit 4F–that corresponds to Tr. at 283-88, which is Dr. Varshney's report.

examination[,] he noted she was able to lift ten pounds from the floor to her waist five to six times with minimal difficulty." Tr. at 21 (citation omitted).

The undersigned finds the ALJ's specified reasons for discrediting Dr. Czerkawski's opinion are supported by substantial evidence. First, it is proper for an ALJ to consider frequency of treatment in determining how much weight to afford an opinion. Dr. Czerkawski examined Plaintiff on August 8, 2011 to complete a "comprehensive physical capacity evaluation," Tr. at 295, and he saw her one other time thereafter on April 25, 2012, Tr. at 324-26. Even Plaintiff refers to Dr. Czerkawski as a "consultative examiner[]," Pl.'s Mem. at 1, and as such, Dr. Czerkawski's opinion is not entitled to any special deference as it would be if he were considered a treating physician. So, this reason is accurate and the ALJ properly considered it.

Second, as to the ALJ's reason regarding Dr. Czerkawski's opinion being inconsistent with Plaintiff's reported daily activities, the ALJ cites to and relies on the summary of Plaintiff's daily activities as told to Dr. Varshney on August 4, 2011. See Tr. at 20 (citing Tr. at 283-88). Dr. Varshney summarized Plaintiff's daily activities as follows:

> [Plaintiff] is able to dress, bathe, and groom herself and cook her food occasionally as well as do light cleaning. Her daughter-in-law helps with laundry, managing her money, as well as the driving. She is able to shop with the help of her husband. She reported that she frequently starts shaking when she does a job for a long period of time and experiences a lot of pressure from her legs. . . . She spends her time watching television.

Tr. at 286-87. Additionally, in his Decision, the ALJ fully summarized Plaintiff's testimony, including testimony regarding her daily activities. See Tr. at 17-18. Ultimately, the ALJ discredited Plaintiff's testimony to the extent it was inconsistent with the RFC assessment. Tr. at 18, 21. In doing so, the ALJ noted the discrepancies between Plaintiff's testimony

at the hearing and what she reported to Dr. Varshney.  Tr. at 20.  Plaintiff does not challenge the ALJ's credibility assessment in this appeal.  See generally Pl.'s Mem.  A complete review of the ALJ's Decision reflects that he appropriately considered Plaintiff's daily activities as one part of his assessment of Dr. Czerkawski's opinion.

Third, the ALJ found Dr. Czerkawski's opinion to be "inconsistent with . . . Dr. Rosemund's treatment notes, which indicate relatively conservative and routine treatment." Tr. at 20.  Dr. Rosemund saw Plaintiff on a fairly regular basis, he noted her complaints of pain, and he diagnosed her with edema, arthralgias in multiple sites, depression, and osteoarthritis.  See Tr. at 274, 276, 278, 319, 322, 328.  He treated her with medications including spironolactone, tramadol, hydrocodone, and naproxen.  See Tr. at 274, 276, 322. According to the most recent treatment note from Dr. Rosemund in the administrative transcript, on August 31, 2012, Plaintiff received an injection in her right shoulder from Dr. Rosemund.  Tr. at 322.  As the ALJ found, Dr. Rosemund's treatment of Plaintiff was largely "conservative and routine."  The only exception may be Plaintiff's receipt of this injection, which could be considered more than conservative treatment.  But, on the whole, substantial evidence supports this portion of the ALJ's findings.

Fourth, regarding the ALJ's reasoning that Dr. Czerkawski's opinion is inconsistent with his own notes, Dr. Czerkawski noted during his examination that Plaintiff "could walk approximately ½ block and then needed to rest."  Tr. at 296.  Plaintiff "could do ten[] step ups in the left leg leading" and she could do two step ups with the right leg leading but that caused "pain into the right groin."  Tr. at 296.  Plaintiff "was able to squat 50% which elicited pain in the right groin.  She was unable to bend her squat more than 2 times without

-12-

difficulty except her right groin pain." Tr. at 296.  During the examination, Plaintiff "was able

to lift 10 pounds from floor [to] her waist 5-6 times without stopping with minimal difficulty."

Tr. at 297.  Plaintiff was "unable to lift 10 pounds from waist to overhead because of right

shoulder pain with external rotation limitation."  Tr. at 297.  She had pain "in both ankles";

her "right knee"; and her "right hip."  Tr. at 297.  Her "gait was antalgic."  Tr. at 297.

On the Physical RFC Questionnaire completed by Dr. Czerkawski, he indicated that

his frequency and length of contact with Plaintiff was 1-2 years.[9]  Tr. at 290.  He noted that

Plaintiff's prognosis was "fair."  Tr. at 290.  He opined Plaintiff could sit for 15 minutes at

one time and stand for 5 minutes at one time.  Tr. at 291.  He also recognized that in an 8-

hour workday, Plaintiff could sit and stand/walk for less than 2 hours each.  Tr. at 292.  He

opined that Plaintiff would need a job that allowed her to shift positions at will.  Tr. at 292.

He also indicated that Plaintiff would sometimes need unscheduled work breaks during an

8-hour workday, and her legs should be elevated when sitting to help with her edema.  Tr.

at 292.  Dr. Czerkawski stated that in a competitive work situation, Plaintiff could rarely lift

and carry less than 10 pounds and never any more than that.  Tr. at 292.

As noted above, the ALJ pointed out that "Dr. Czerkawski indicated [Plaintiff] could

only occasionally lift, but never more than ten pounds."  Tr. at 21.  Yet, "during his physical

examination[, Dr. Czerkawski] noted [Plaintiff] was able to lift ten pounds from the floor to

her waist five to six times with minimal difficulty."  Tr. at 21.  This does appear to be an

inconsistency that was properly considered by the ALJ.  But, even accepting Plaintiff's

---

[9]      Dr. Czerkawski and Dr. Rosemund both work at Baptist Primary Care, where Plaintiff
was seen most often.  See Tr. at 294, 318-19.

-13-

argument that this is not an inconsistency, the other reasons provided by the ALJ still amount to substantial evidence to support his decision with respect to Dr. Czerkawski's opinion.  While the ALJ's discussion of Dr. Czerkawski's opinion is not perfect, on the whole, it is supported by substantial evidence.

### V.  Conclusion

In sum, the ALJ erred in his consideration of Dr. Varshney's opinion, so the undersigned cannot find that portion of the ALJ's Decision to be supported by substantial evidence.  The ALJ's analysis relating to Dr. Czerkawski, however, is supported by substantial evidence as explained herein.  After due consideration, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)     Reconsider the medical opinion of Dr. Varshney; clearly specify the weight assigned to the opinion and articulate the reasons therefor; and

(B)     Take such other action as may be necessary to resolve this matter properly.

2.     The Clerk is further directed to close the file.

3.     In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order

-14-

entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

      **DONE AND ORDERED** at Jacksonville, Florida on March 10, 2015.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

jlk
Copies to:
Counsel of Record

-15-